J-S62022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, 

Appellee

v.

KIMANI LOCKHART,

Appellant

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 3150 EDA 2013

Appeal from the Judgment of Sentence of October 22, 2013
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000634-2012

BEFORE: ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 12, 2014**

Appellant, Kimani Lockhart, appeals from the judgment of sentence entered on October 22, 2013. We affirm Appellant's conviction, vacate his judgment of sentence, and remand for resentencing.

The suppression court made the following findings of fact:[1]

On March 14, 2012, at approximately 8:00 p.m., [Appellant] was stopped on Interstate [] 80 West by Pennsylvania State Trooper Mark Conrad[] for traveling at 69 miles per hour[,] in excess of the posted 55 miles per hour speed limit. Trooper Conrad was assigned to radar duty using a Genesis handheld radar unit, an approved radar device that undergoes a self-test before and after use. He was dressed in full uniform, operating a marked patrol vehicle, and was carrying his firearm on his duty-belt. Trooper Conrad executed a traffic stop, approached[ Appellant's] vehicle, and requested driver and vehicle identification material. [Appellant] produced a New York State identification card, but he

---

[1] We note that the suppression court fully complied with the requirements of Pennsylvania Rule of Criminal Procedure 581(I).

did not have a [driver's] license nor registration or insurance information for the vehicle.

[Appellant] represented that the vehicle was a rental, but had been rented by his girlfriend. He was not in possession of the rental agreement. Trooper Conrad checked and found no report that the vehicle was stolen. When asked where he was traveling, [Appellant] relayed that he was driving back to Wilkes-Barre, Pennsylvania after having visited his cousin in the Poconos. [Appellant] was unable to provide his cousin's address.

Trooper Conrad returned to his vehicle and conducted a license history and criminal history check. The license check revealed that [Appellant] had a suspended Pennsylvania driver's license. The criminal history check revealed that [Appellant] had been convicted of robbery, possession of marijuana, and distribution of controlled substances, and was currently on Pennsylvania [s]tate [p]arole. Trooper Conrad testified that based on [Appellant]'s travel from and to a known source location for drugs, possession of a rental vehicle that he had not rented and did not have a contract for, lack of a valid license, and criminal history, he developed a reasonable suspicion that [Appellant] was involved in drug trafficking.

Trooper Conrad called for backup and Trooper Cortez arrived at the scene. At approximately 8:37 p.m., Trooper Conrad returned to [Appellant], requested that he exit the vehicle, and sought his consent to search the vehicle. In turn, Trooper Conrad explained a [w]aiver of [r]ights and [c]onsent to [s]earch form identifying the vehicle as the place to be searched, which [Appellant] acknowledged and signed. The . . . form signed by [Appellant] provides, in pertinent part:

> I have been told that I do not have to give my consent. I understand that I have the right to refuse this request, and that the police may not be able to conduct this search without a search warrant unless I give my consent. Nonetheless, I voluntarily give my consent to the police to conduct this search.

Before searching the vehicle, Trooper Conrad asked [Appellant] if he had anything illegal on his person which [Appellant answered in the negative.] Trooper Conrad then requested consent to search [Appellant]'s person, which [Appellant]

granted. Trooper Conrad conducted a pat-down search of [Appellant], discovering a bulge in the rear of his jeans. When asked, [Appellant] insisted that it was simply his jeans. [Appellant] was then placed in handcuffs and advised of his **Miranda**[2] rights before Trooper Conrad removed a plastic bag containing approximately 50 grams of powder [c]ocaine from the back of his jeans.

Trooper Conrad testified that the search was not undertaken for officer safety, and that no weapons were found during the search. Additionally, Trooper Conrad testified that once he had discovered that [Appellant] was not in lawful possession of the vehicle, he was no longer free to leave.

Findings of Fact and Conclusions of Law, 11/1/12, at 1-4 (internal paragraph numbers, certain paragraph breaks, and citation omitted).

The relevant procedural history of this case is as follows. On May 29, 2012, Appellant was charged via criminal information with possession with intent to distribute ("PWID") cocaine,[3] possession of cocaine,[4] possession of drug paraphernalia,[5] speeding,[6] and driving under suspension.[7] On August 31, 2012, Appellant filed a motion to suppress. On September 25, 2012, a suppression hearing was held. On November 1, 2012, the suppression court

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

[3] 35 P.S. § 780-113(a)(30).

[4] 35 P.S. § 780-113(a)(16).

[5] 35 P.S. § 780-113(a)(32).

[6] 75 Pa.C.S.A. § 3362(a)(2).

[7] 75 Pa.C.S.A. § 1543(a)(2).

issued detailed findings of fact and conclusions of law and denied Appellant's motion to suppress. At the conclusion of a bench trial on August 27, 2013, Appellant was found guilty of all charges. The trial court sentenced Appellant to a mandatory minimum of five to ten years' imprisonment. *See* 18 Pa.C.S.A. § 7508(a)(3)(ii) (providing for a mandatory minimum sentence of five years' imprisonment for a defendant convicted of PWID of between 10 and 100 grams of cocaine when at the time of the defendant's sentencing he has previously been convicted of a drug trafficking offense). This timely appeal followed.[8]

Appellant raises one issue for our review

Whether the trial court erred in denying the Appellant's motion to suppress where the Commonwealth failed to establish that [a] search of [Appellant's] person was supported by reasonable suspicion?

Appellant's Brief at 4 (complete capitalization removed).

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal

---

[8] On November 12, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On November 26, 2013, Appellant filed his concise statement. On December 9, 2013, the suppression court issued a statement adopting its findings of facts and conclusions of law. *See* Pa.R.A.P. 1925(a)(1) (permitting trial court to request that the judge who ruled on the contested matter issue a Rule 1925 opinion and permitting adoption by reference of previously filed rationale). Appellant's lone issue on appeal was included in his concise statement.

conclusions drawn from those facts are correct." ***Commonwealth v. Stem***, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Gary***, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

We note the procedural posture of this case and how that impacts our scope of review in this case. The suppression hearing in this case occurred in September 2012 and the trial occurred in August 2013. In October 2013, our Supreme Court decided ***L.J.*** In ***L.J.***, our Supreme Court held that this Court's scope of review when reviewing a suppression court's denial of a suppression motion is limited to the evidence presented at the suppression hearing. ***L.J.***, 79 A.3d at 1085. Evidence produced at trial cannot be considered when reviewing the propriety of a suppression court order. ***Id.*** However, our Supreme Court chose to apply this rule prospectively instead of retroactively. ***Id.*** at 1088-1089. As the suppression hearing and trial in this case occurred prior to ***L.J.***, we may review both the evidence presented at trial and the evidence presented at the suppression hearing. ***See id.*** at 1089 ("All litigation commenced Commonwealth-wide after the filing of [***L.J.***], will be considered in accord with [that] opinion.").

Appellant contends that the search of his person was illegal for two reasons.[9] First, he contends that Trooper Conrad lacked reasonable suspicion to extend the investigative detention that began as a routine traffic stop. Second, he contends that even if Trooper Conrad possessed reasonable suspicion to extend the traffic stop, his consent to the search of his person was not voluntary. The Commonwealth, on the other hand, contends that the interaction between Appellant and Trooper Conrad was a part of the original traffic stop and therefore Trooper Conrad was not required to have reasonable suspicion to ask for consent to search Appellant's person. Alternatively, it argues that if the interaction were not a natural continuation of the traffic stop, Trooper Conrad possessed reasonable suspicion and Appellant's consent was voluntary.

On appeal, neither party disputes that Trooper Conrad had probable cause, based upon radar device readings, to initiate a traffic stop of Appellant's vehicle for a speeding violation. Instead, the parties contest whether Appellant gave valid consent to a search of his person and whether

_____

[9] On appeal, Appellant only seeks suppression of evidence gathered from the search of his person. *See* Appellant's Brief at 4. Nonetheless, Appellant devotes a significant portion of his brief to addressing whether he consented to a search of his vehicle. We will not directly address these arguments as the only issue is whether the Commonwealth established reasonable suspicion to support a search of Appellant's person. *See* Appellant's Brief at 4; ***Commonwealth v. Samuel***, 2014 WL 5305816, *3 (Pa. Super. Oct. 17, 2014) (no question will be considered unless included in Appellant's statement of question involved).

Trooper Conrad possessed the requisite constitutional justification to extend the initial traffic stop interaction to include a search of Appellant's person. We conclude that the issue of consent is dispositive in this case and that the issue of whether Trooper Conrad justifiably extended the traffic stop is interrelated to that dispositive determination under Pennsylvania law. Hence, we address each of the parties' contentions as they arise in relation to our discussion of the issues presented in this appeal.

On a motion to suppress, the burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellant was legally obtained. *See Commonwealth v. Howard*, 64 A.3d 1082, 1087 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (citation omitted). "As [this Court has] explained, the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration and quotation marks omitted).

If an individual gives valid consent, then the ensuing search is not unreasonable and the individual's constitutional rights are not violated by the police's conduct. *See Florida v. Jimeno*, 500 U.S. 248, 250–251 (1991). "To establish a valid consensual search, the prosecution must first prove that the consent was given during a legal police interaction, or if the consent was given during an illegal seizure, that it was not a result of the

illegal seizure; and second, that the consent was given voluntarily."

***Commonwealth v. Newton***, 943 A.2d 278, 283–284 (Pa. Super. 2007)

(internal quotation marks and citations omitted).

The first requirement for finding valid consent is that the consent be

given during a legal encounter between the police and a citizen.[10] As this

Court has explained:

> When conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation. Upon producing a valid driver's license and registration, the driver must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. In order to justify detaining the driver for further questioning, the officer must have reasonable suspicion of illegal transactions in drugs or of any other serious crime.

***Commonwealth v. Grosso***, 672 A.2d 792, 794 (Pa. Super. 1996) (internal

alteration, citations, and quotation marks omitted). Even when an individual

does not produce a valid driver's license, police still must have reasonable

suspicion in order to transition the traffic stop to an investigation of other

criminal activity. ***See Commonwealth v. Parker***, 619 A.2d 735, 738 (Pa.

Super. 1993).

---

[10] To the extent that Appellant argues that he never gave affirmative consent to search his person, we reject that argument. The suppression court found that Appellant gave verbal consent to be searched. ***See*** Findings of Fact and Conclusions of Law, 11/1/12, at 16. This finding of fact is supported by the record. ***See*** N.T., 9/25/12, at 12 (Trooper Conrad explaining that he verbally asked Appellant for consent to search his person).

We reject the Commonwealth's argument that Trooper Conrad's requests to search were a natural continuation of the original traffic stop. As the suppression court noted, the requests to search were unrelated to the original reason for the traffic stop (*i.e.* speeding) or the subsequent offense of driving on a suspended license. As such, we agree with the suppression court that the Commonwealth was required to prove that Trooper Conrad had reasonable suspicion to transition from a traffic stop to an investigative detention seeking evidence of other criminal activity.

As this Court has explained:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. . . . In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

The determination of whether an officer had reasonable suspicion . . . is an objective one, which must be considered in light of the totality of the circumstances.

*Clemens*, 66 A.3d at 379 (ellipsis and citation omitted).

In this case, Trooper Conrad had reasonable suspicion to extend Appellant's traffic stop for further investigation. In particular, Appellant told Trooper Conrad that he was returning from visiting his cousin in the Poconos. Appellant, however, could not provide Trooper Conrad with his cousin's address. Trooper Conrad also knew that Appellant was heading to

and from known source cities for narcotics, was using a rental car that was not in his name, lacked the appropriate paperwork for that vehicle, and was driving despite a suspended Pennsylvania driver's license. Furthermore, Trooper Conrad was aware that Appellant had past convictions for dealing drugs, was on state parole, and was traveling on a route frequented by drug dealers. When taken as a whole, the evidence provided Trooper Conrad the necessary reasonable suspicion to believe that criminal activity was afoot. Specifically, Trooper Conrad possessed reasonable suspicion to believe that Appellant was engaged in drug trafficking. Accordingly, the first requirement for valid consent to search, *i.e.*, the requirement that the consent was given during a legal police/citizen interaction, is satisfied as the interaction between Appellant and Trooper Conrad was a lawfully justified investigative detention.

We next examine whether Appellant's consent to search his person was voluntary. This Court has set forth numerous factors to be considered when determining if consent was voluntary. Specifically, we consider

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*) (citation omitted). We consider those factors *seriatim*.

As to the first factor, the suppression court found that there were some police excesses. We agree that there were some excesses in that there were two uniformed troopers present for the routine traffic stop. We conclude, however, that the suppression court correctly determined that this factor only weighed minimally against voluntariness. Appellant was not surrounded by a swat team or several officers. Instead, in addition to Trooper Conrad there was only one other trooper present.

As to the second factor, there was no physical contact between Appellant and Trooper Conrad prior to Appellant consenting to his person being searched. As such, the second factor weighs in favor of a finding of voluntariness. As to the third factor, the suppression court correctly determined that this factor weighed against voluntariness. Trooper Conrad directed Appellant's movement, including telling him to stay in his vehicle and then telling him to exit the vehicle. As the suppression court noted, however, the weight to be afforded this factor was low. The direction of Appellant's movement was not extensive. Furthermore, the locations to which Appellant was directed were not intimidating.

As to the fourth factor, Trooper Conrad's demeanor and manner of expression weigh in favor of voluntariness. The suppression court found that there "was nothing to suggest that Trooper Conrad behaved in an

intimidating manner or addressed [Appellant] in an aggressive way." Findings of Fact and Conclusions of Law, 11/1/12, at 16. This finding of fact is supported by the record and Appellant does not contend on appeal that Trooper Conrad's demeanor and/or manner of expression were unprofessional. Accordingly, we conclude that the fourth factor weighs in favor of voluntariness.

As to the fifth factor, the location of the encounter, the suppression court found that this factor weighed against voluntariness. The suppression court's conclusion is legally correct; however, like the suppression court, we conclude that this factor only weighs slightly against a finding of voluntariness. Specifically, although the encounter occurred during a traffic stop at night, it occurred on public streets. The encounter did not occur in the back of a police cruiser or at a police station. Thus, this factor weighs minimally against voluntariness.

As to the sixth factor, we conclude that this factor weights in favor of voluntariness. Trooper Conrad asked a basic question, whether Appellant would consent to the search. The answer was equally straightforward. There was no confusion with the question and or answer. There was nothing else present in the question or answer that could have led to confusion. Thus, the sixth factor weighs in favor of voluntariness.

As to the seventh factor, the suppression court found that this factor weighed slightly against voluntariness. We agree. The existence of the

traffic stop, an investigative detention, and the length thereof weighs against a finding of voluntariness. The other aspects of the investigative detention, however, do not weigh against voluntariness. Thus, we conclude that the suppression court correctly determined that this factor weighed slightly against voluntariness.

The eighth factor weighs against voluntariness. There was no indication that Appellant was free to leave. Most of the dispute in this case focuses on the ninth factor, which asks whether the citizen was informed that consent was not compulsory. As our Supreme Court has noted, this factor is especially important. *See Commonwealth v. Strickler*, 757 A.2d 884, 901 (Pa. 2000), *citing United States v. Mendenhall*, 446 U.S. 544, 558-559 (1980); *Florida v. Bostick*, 501 U.S. 429, 432 (1991). The suppression court found, and the Commonwealth argues on appeal, that Appellant was told he did not have to consent to the search. On the other hand, Appellant contends that he was never told that he could decline the officer's request to search his person.

We conclude that the suppression court's factual finding that Appellant was notified that he could decline Trooper Conrad's request to search his person is supported by the record.[11] As the suppression court noted,

_____

[11] To the extent that Appellant relies upon a videotape of the encounter between himself and Trooper Conrad, that argument is waived. No recording was included in the certified record forwarded to this Court. "We
*(Footnote Continued Next Page)*

immediately prior to Trooper Conrad requesting permission to search Appellant's person, Trooper Conrad verbally explained to Appellant that he had the option of not consenting to a search of his vehicle. *See* N.T., 9/25/12, at 10-11. Furthermore, Trooper Conrad presented Appellant with a waiver of rights form that also outlined his right of refusal. Appellant contends that the location of his signature, along with the fact that it was dark outside, evidences that he did not read the form. Appellant, however, did not testify that he failed to read the form. The only evidence of record is the testimony of Trooper Conrad, who testified that Appellant had a chance to read and review the form. The location of Appellant's signature immediately after the bold statement that he is giving consent for the police to search his vehicle evidences the fact that he read and reviewed the form insofar as the critical element of consent is concerned. It may even be more indicative that Appellant read and reviewed the form since Appellant chose to sign the form immediately below the relevant statement that he voluntarily consented to a search of his vehicle.

We recognize that there is no evidence that Trooper Conrad explicitly told Appellant that he could decline a search of his person (as opposed to a search of his vehicle). The suppression court found, however, that Appellant

*(Footnote Continued)* _____

may not review that which an appellant, despite bearing the burden to so include, has failed to remit within the certified record." ***Commonwealth v. Spotti***, 94 A.3d 367, 381 (Pa. Super. 2014) (*en banc*) (citation omitted).

- 14 -

was aware of his right to decline Trooper Conrad's request to conduct a search of his person because the Trooper's request immediately followed the moment at which Trooper Conrad informed Appellant of his right to refuse a vehicle search. We discern no clear error in this factual finding. *Cf. Strickler*, 757 A.2d at 900 (although officer did not explicitly tell motorist that he was free to leave, his actions "at least suggested as such").

In addition to the nine factors outlined in *Kemp*, the suppression court considered "the maturity, sophistication and mental or emotional state of [Appellant] (including age, intelligence and capacity to exercise free will)." *Commonwealth v. LaMonte*, 859 A.2d 495, 500 (Pa. Super. 2004). The suppression court found that this factor weighed in favor of voluntariness. It concluded that Appellant produced no evidence that he lacked the sophistication, mental state, or emotional state to voluntarily consent to the search. *See* Findings of Fact and Conclusions of Law, 11/1/12, at 16. We conclude that this finding is supported by the record. Our review of the record uncovers nothing that indicates Appellant was unable to understand Trooper Conrad's request.

In sum, we agree with the suppression court's analysis of each of the ten factors set forth in *Kemp* and *LaMonte*. Several of the factors weigh in favor of voluntariness and other factors weigh against voluntariness. The suppression court weighed these factors and concluded that the factors in favor of voluntariness outweighed the factors against voluntariness.

Specifically, it concluded that the factors that weighed against voluntariness should not be afforded significant weight. On the other hand, it concluded that the ninth *Kemp* factor weighed heavily in favor of voluntariness. That, combined with the other factors that weighed in favor of voluntariness, led the suppression court to conclude that under the totality of the circumstances Appellant voluntarily consented to the search of his person.

We conclude that the suppression court's analysis is supported by the record and free of legal error. Our Supreme Court has repeatedly emphasized the importance of the fact that a defendant was informed that he could refuse a search. *E.g., Commonwealth v. Mack*, 796 A.2d 967, 971–972 (Pa. 2002), *citing Strickler*, 757 A.2d at 901. In this case, the totality of the circumstances suggest that Appellant was aware that he had the right to refuse a search of his person and, yet, he still elected to consent to the search. That, in combination with the several other factors that weighed in favor of a finding of voluntariness, outweighed the less significant factors that weighed against voluntariness. Our conclusion is supported by previous decisions of this Court.

In *Commonwealth v. By*, the defendant was pulled over because the vehicle's windows had excess tint. 812 A.2d 1250, 1253 (Pa. Super. 2002), *appeal denied*, 839 A.2d 350 (Pa. 2003). During the traffic stop, the police officer asked By to exit the vehicle. *Id.* At that time, the police officer gave By a warning and informed him that he was free to leave. *Id.* The police

officer, however, asked By if he would be willing to answer a few questions. *By*, 812 A.2d at 1253. The police officer proceeded to ask By if there were any narcotics or firearms in the vehicle. *Id.* By hesitated, but eventually consented to the search of the vehicle. *Id.*

This Court found that the following factors weighed in favor of voluntariness: the policer officer's conduct was restrained and he did not use force; he spoke in a casual manner; he did not order By to stand at a particular location; and he informed By that he was free to leave. *Id.* at 1256. This Court found that the following factors weighed against voluntariness: the interaction took place after a traffic stop at night; three officers were present; and the officer failed to inform By that he could refuse the search. *Id.* at 1256-1258. This Court concluded in *By* that, under the totality of the circumstances, there was sufficient evidence to conclude that By had voluntarily consented to a search of his vehicle. *Id.* at 1258.

The circumstances in *By* were more conducive to a finding of involuntariness than the circumstances in the case at bar. Many of the factors in the two cases were similar and militated toward the same conclusion. The only two facts that differ significantly are that the defendant in *By* was notified that he could leave but was not notified that he could refuse the search. In the case *sub judice*, by contrast, Appellant was not notified that he could leave but was aware that he could refuse the search. As we have noted above, the fact that a defendant is aware that he can

refuse a search is generally considered a critical factor in determining whether consent was voluntary. Furthermore, in this case there was a legitimate reason that Appellant was not told that he could leave the scene, *i.e.*, he did not have a valid driver's license to operate a motor vehicle. In the absence of a lawful right to operate a vehicle, telling an individual they are free to leave at night on the side of the road would obviously be a futile act. Thus, the consent approved in **By** lacked several of the factors supporting consent in the present case.

Likewise, in **Commonwealth v. Rosas**, the defendant was pulled over for speeding and was unable to produce a valid driver's license. 875 A.2d 341, 344 (Pa. Super. 2005), *appeal denied*, 897 A.2d 455 (Pa. 2006). Rosas was subsequently handcuffed because a criminal records search revealed that he was possibly a deported felon. **Id.** at 345. Police then asked Rosas if he would consent to a search of his vehicle for a license plate that appeared to be in the back seat. **Id.** When an officer went to retrieve the license plate, he noticed cocaine on the backseat. **Id.**

Rosas, along with a passenger in the vehicle, moved to suppress the cocaine. They argued that the search was unlawful as Rosas' consent was involuntary. The suppression court granted the motions to suppress the cocaine and the Commonwealth appealed to this Court. This Court first concluded that Rosas was not under arrest when he was placed in handcuffs;

rather he was handcuffed in the process of an investigative detention. *Rosas*, 875 A.2d at 347.

This Court then went on to conclude that the following factors weighed in favor of voluntariness: the police officer made the request to search in a non-coercive way and, despite the fact that Rosas was in handcuffs, there was no implied or express coercion. *Id.* at 349-350. Although this Court did not discuss the other factors, we note that the circumstances in *Rosas* included: the presence of multiple police officers, nothing in the record to indicate that the police told Rosas he could refuse the request to enter his vehicle, and Rosas was not free to leave as he was in handcuffs. Nonetheless, this Court found that Rosas' consent was voluntary and therefore reversed the trial court's suppression order.

The circumstances in *Rosas* were much more coercive than the situation in the case at bar. In this case, Appellant was not in handcuffs when Trooper Conrad asked him if he could search his person. Furthermore, Appellant was made aware that he was permitted to decline the request to search. If the circumstances in *Rosas* were not sufficiently coercive to warrant a finding of involuntariness by this Court, then the circumstances in this case dictate that we conclude that Appellant's consent was voluntary.

Appellant relies upon several cases in support of his argument that the search was illegal; however, all of those cases are inapposite. Appellant cites *Commonwealth v. Freeman*, 293 A.2d 84 (Pa. Super. 1972), for the

proposition that evidence seized in a search incident to a pretextual arrest is inadmissible. Appellant's Brief at 10. In this case, however, the cocaine was not found in a search incident to any type of arrest. Instead, the cocaine was found during a consensual search prior to arrest. Appellant likewise cites **Commonwealth v. Lopez**, 609 A.2d 177 (Pa. Super. 1992), *appeal denied*, 617 A.2d 1273 (Pa. 1992). **See** Appellant's Brief at 11. In **Lopez**, however, this Court concluded that police lacked reasonable suspicion to prolong the traffic stop. **Lopez**, 609 A.2d at 182. As noted above, we have concluded that Trooper Conrad possessed reasonable suspicion to extend the traffic stop that preceded the request for permission to search Appellant's person.

Appellant also relies upon this Court's decision in **Commonwealth v. Acosta**, 815 A.2d 1078 (Pa. Super. 2003) (*en banc*), *appeal denied*, 839 A.2d 350 (Pa. 2003). **Acosta** is distinguishable for two reasons. First, in **Acosta** the suppression court found that the actions of the officers were intimidating. **Id.** at 1085. Specifically, the suppression court noted that three officers (instead of two like in the instant case) were in close proximity to the defendant when consent to search was sought. **Id.** More importantly, however, was the fact that, when the suppression court weighed all of the relevant factors, it determined that they weighed against a finding of voluntariness. The majority in **Acosta** concluded that the weighing of the factors by the suppression court was not an abuse of

discretion and lamented the fact that the dissent reweighed the factors in order to conclude that the defendant's consent was voluntary. *See Acosta*, 815 A.2d at 1086 n.5. In the case at bar, the suppression court weighed all of the relevant factors and determined that Appellant's consent to search his person was voluntary. Like in *Acosta*, we decline to reweigh the evidence. For all of these reasons we conclude that Appellant's consent was voluntary, that Trooper Conrad's search of Appellant's person was lawful, and that the suppression court correctly denied Appellant's motion to suppress. Accordingly, Appellant's only issue raised on appeal is without merit.

Although we have disposed of Appellant's lone issue on appeal, we *sua sponte* consider the legality of Appellant's mandatory minimum sentence under 18 Pa.C.S.A. § 7508(a)(3)(ii). We note that "[I]egality of sentence questions are not waivable and may be raised *sua sponte* [on direct review] by this Court." *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*). Moreover, this Court recently held that "a challenge to a sentence premised upon [*Alleyne v. United States*, 133 S.Ct. 2151 (2013)] . . . implicates the legality of the sentence and cannot be waived on appeal." *Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*).

In *Newman*, this Court held that a mandatory minimum statute which sets forth the triggering facts in subsection (a) and the sentencing procedure in subsection (c) is unconstitutional and that the sentencing procedure

subsection is not severable from the remainder of the statute. *Newman*, 99 A.3d at 101. *Newman* was followed by a three-judge panel's opinion in *Commonwealth v. Valentine*, 2014 WL 4942256 (Pa. Super. Oct. 3. 2014). In *Valentine*, this Court held that because the whole statute was unconstitutional, it was immaterial that the Commonwealth charged the requisite facts for imposition of the mandatory minimum in the criminal information and the jury found those facts beyond a reasonable doubt. *Id.* at *8-9. This Court has subsequently applied the logic of *Newman* and *Valentine* to hold section 7508, the section Appellant was sentenced under, unconstitutional. *E.g.*, *Commonwealth v. Fennell*, 2014 WL 6505791, *1-8 (Pa. Super. Nov. 21, 2014). Therefore, pursuant to *Newman, Valentine, and Fennell*, we must conclude that Appellant's sentence is illegal. We remand to the trial court for the sole purposes of resentencing without consideration of the mandatory minimum.

Judgment of sentence vacated. Case remanded solely for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2014